In addition to answering your questions, I'd like to focus my comments this morning on Rule 4K2 of the National Contacts, and I'd like to reserve four minutes for rebuttal. The reason why I've selected this issue is on page 24 of their brief. Caddy does not claim that we failed to state a prima facie case for specific jurisdiction under Rule 4K2. Instead, at pages 24 and 25 of his brief, he claims that our reliance on that must fail because the allegations of targeting the United States was controverted. Counsel, we get to make the decision on this regardless of the details of the brief, and I'd like you to focus on something right now that's of concern to me. It looks to me as though there's a case that we decided that's pretty close to this one called Schwarzenegger v. It's Arnold Schwarzenegger v. Fred Martin Motor Company. Yes. I'm sure you're familiar with it. Yes, Your Honor. Why doesn't that command the result in this case against you? Okay. Well, in the first place, Schwarzenegger case involved the Calder effects test. The car dealer in Ohio put the ad on his Internet site. That's correct, Your Honor. Cardealer.com using Schwarzenegger's picture. Schwarzenegger sued in California. Yes. And we said, nope, you've got to go to Ohio. Right. He didn't do anything to avail himself of California. That's correct. But, again, that was under the Calder effects test. So let's assume that you couldn't get long-arm jurisdiction under California, and let's suppose that Schwarzenegger governs the day on Calder, which I don't agree with, and I'll answer that in a second. The point is that still under Rule 4K2 sets as precise for the reason when you cannot sue under any State long-arm jurisdiction, you're able to aggregate the national contacts with the State, and that's what I was going to address. But in answering with respect to whether Schwarzenegger governs the Calder issue, which we raised, the answer we respectfully say no for two reasons. First, as this Court's aware, this Court can't overrule an earlier decision, okay, as a matter of law, unless it's en banc. So you're saying don't follow Schwarzenegger because you think Schwarzenegger was wrong? No. What I'm saying is that in Schwarzenegger, the defendant did not know that the plaintiff in that case was the governor of California at the time the ads were placed. And, therefore, the Calder effects test couldn't have possibly applied as this Court in Bancroft Masterson. This car dealer in Ohio was the only person on the planet that didn't know who Arnold Schwarzenegger was? No. But, Your Honor, as this Court said in Bancroft Masters, Myers, Harris-Rudsky, et cetera, numerous cases, in order for the effects test to take place, you have to know that the plaintiff is a resident of the form State. And since he didn't – there's no allegation that they knew that the – that Mr. Schwarzenegger at that time, who was not the governor, was a resident of the form State, then you can't say you're targeting the form by targeting the plaintiff. And in that case, this Court – that's what this Court held, that they did not know that, and, therefore, you wouldn't be targeting. This Court in Bancroft Masters said, even if an act is outside of the State – I don't – I don't think that's what we wrote. Maybe you're – maybe you could point me to the language that supports you. I thought we focused on whether the Ohio car dealer targeted California, and – Your Honor, you're absolutely correct. But in that case, if – if the plaintiff – if the – if there was an allegation that the defendant knew the plaintiff was – resided in California, then the whole tenor of the case would have been different. It would have said that – I think we would have written a different decision if we thought the Ohio car dealer knew Schwarzenegger lived in California. I'm not – I wasn't on the panel, Judge Trotman, so I can't answer that question. But I can say this. In Harris-Rutzke, in Harris-Rutzke, all of the conduct was in – was in the U.K., and the whole purpose was to try to take away business in the U.K. And this Court said it doesn't matter because you're targeting the plaintiff. Now let me ask you something else. Yes. I can't figure what this Pebble Beach did that targeted – Pebble Beach in England did that targeted Pebble Beach in the U.S. It looks like the English Pebble Beach, they don't play golf. There's no golf course. Correct. It's a bed and breakfast and a bar and cafe. And they don't target the American market. They don't advertise in America. About all I could get out of the brief is that it's kind of a tourist – tourist location. Tourists go there, and some tourists in England are Americans. Is there more? Absolutely, Your Honor, because we alleged in paragraphs in the complaint that went uncontroverted that he specifically targeted the United States market through – market with his website. And not only did he target it, and it went uncontroverted – How do you target the U.S. market with a website? Yes. I guess you could advertise on American websites. Well, Your Honor, it's a U.S. domain name. And we all know on the Internet, people search by the – by domain names. When you say domain name, was it a .com? It wasn't a .uk. And so we alleged – Saying anything .com is sufficient availment. Not – no. But we held the exact opposite in Schwarzenegger. No, Your Honor, because in Schwarzenegger, the ad wasn't on the Internet. Yes, it was. No, Your Honor, it was just in the – in the newspapers. The Internet – he had an Internet, but there was no evidence that the defendant in Ohio, in Schwarzenegger, sold anybody in California. But in this case, the evidence is uncontroverted that his primary market is sales to Americans. And that's – that's – it's his primary market. In Paragraph 5, it says he actively solicits business from the United States. He targeted the United States by using the market. That's true of everyone in Europe. That's correct. That's correct. But California is the largest state in the country. I mean, in – yeah, it's the largest state. It's the sixth largest economy in the world. Correct. And we're not saying that merely – we're not saying that merely because he has a website that he has targeted the United States. We are hearing a motion to dismiss. The allegations of the complaint, unless they're controverted, must be accepted as true.  And what we said, he expressly targeted the United States. His resort is in – is located at – attracts U.S. tourists. We said he alleged – we alleged that he made sales to the United States. We asked for discovery to the extent there's any controversy about that. We indicated in our allegations that he targeted United – he targeted plaintiff because he worked next to Pebble Beach. He knew the fame of Pebble Beach. And he is engaged in commerce with the United States. There is no controversy. They did not controvert that they did not do sales in the United States. They didn't controvert that they did not even do sales as their primary market. In the Third Circuit, the court was a Spanish website. And the – and the case that we cited was the Torres Arras case. And in the Torres Arras, it was a Spanish website. And the Third Circuit said, well, it may be a Spanish website, but it may be that they intend in order to still do business in the United States. Here, there is no dispute. He advertised, we said, purposely picked a U.S. website. He took the famous mark where he knew was famous, that people attract to, and he made sales based on that. In Schwarzenegger, there were no sales from California residents. Where is that? I'm looking at the excerpts. I'm looking at Excerpts 126 and 127. The manager of this Pebble Beach in England says she's never even gotten an email from a U.S. resident wanting to stay there. Well, exactly. And as we pointed out, first of all, that was a reply declaration. It was submitted with a reply. We – we submitted certain reply declarations to the court to every site. But what she said was, we allege in the complaint that they made reservations through the Internet website, which has an inquiry function. She said that she didn't have any conversations on an email, which isn't what we alleged. And that was pointed out by Professor Galb. She gives where they advertise. She says they don't advertise in any publications directed to the U.S. They advertise in the Echo, a Hampshire local paper. Your Honor, she's – Compass, a free magazine in Dorset, in Hampshire. Even the district court found that they advertise on Internet. She's referring to her cafe with the local – the local newspapers, even defended in their brief set that they advertise in the United States on the Internet.  That was a brief district court report. You'd also be able to get jurisdiction over the cafe in Tanzania. They have Internet cafes in Tanzania, I'm sure. Yes. But if – if – Is that right? No. No. Not if – the answer is, unless they were targeting the United States, if somebody uses Internet, there is not any target that – under Rule 142. How did they target the U.S. any more than they targeted Tanzania? Because – because the target was they knew that was – Pebble Beach was a famous mark. Sinatra in this Court said that when a court – when a defendant takes a well-known mark, they are aiming at – at the person, and they know that they reside in the foreign State. In fact, this – this Court in Sinatra said, all you have to do – Calder is satisfied if you use – you are advertising in the market, you are using a mark that's well-known by the plaintiff, and you – in fact, in order to try to get business. In the Mattel case, there was just advertising a well-known name, Barbie. They said advertising the United States included, and they said that's sufficient because they knew the plaintiff resided in the foreign State. So it is – Does it make any difference that the – that U.K. appears right after Pebble – Pebble Beach? Your Honor, there's – I cited the cases that where people, when you have a geographical location, people know that there's different – that it's still an infringement of – of we have a registered mark, federally registered, and the answer is no. They still realize it's – It sounds like a foolish question, but my law clerks were curious as to what the answer is. Why do you bother to file a lawsuit against a little teeny operation on a Pebble Beach in U.K.? Well, that's – that's – I'm glad you asked that question because – because the – trademark owners are jealous about controlling their reputation. We allege and we believe that people would have believed that this company was affiliated with a Pebble Beach company. They are using our mark in commerce with the United States and making sales. Just as – just as solutions – Is that all it is, is jealousy? What my clerks wanted to know is if a failure to defend a trade name somehow could work against you in subsequent lawsuits in the nature of, you know, latching or something like that. Well, not only that, but there's issues if you out-police people. Can that happen if you – if you own Pebble Beach and you sit back and 50 people use it and you don't do anything, the 51st person comes along and you jump on them, can the 51st person say – The answer is yes. It's called – What is it called? It's called – well, it's called sort of – it's a sort of – it's a ban, but it is – it is – there's cases, many cases, if you don't police your mark against third parties, you're – the scope of your mark gets narrowed, okay? And so they have – they do not want – it's just like if someone tells a lie about somebody, it takes a million dollars, a million times to retract it. If somebody uses your mark without your permission and there's – and we allege it's inferior quality services, and they say, oh, I went to Pebble Beach, it wasn't any good, we can't say, well, was that Pebble Beach in California or Pebble Beach, UK? I went to Pebble Beach and the quality wasn't very good. So they have to control the reputation and mark. So that's why it's irreparable. So the reason is twofold. Number one, jealousy. Number two, possibility of abandonment. No. The answer is not jealousy. The issue is that they have the – Your word, not mine. Okay. Okay. Would you abandon the mark or – I'm sorry? Would you abandon the mark if you didn't police it? The answer is not technically – what happens, the courts say. My favorite word again, technically. No. They don't say it's abandoned. What they say is the scope of your mark gets narrowed. Okay. Okay. They don't say it's abandoned, you still – but the scope of your mark gets narrowed. So it is an injury. Use it or it gets small. That's right. No, no, not – use it or stop or stop the third parties who are using it. So you might be limited to golf courses and not bed and breakfast and bars and cafes. Or – that's right. And so – and so the fact of the matter is there is an injury. I mean, there's no – the Lanham Act says, in fact, if there's a use of your mark in the Lanham Act, all it is is advertising triggers – triggers the use of your mark. Isn't the final question whether the exercise of jurisdiction here would be reasonable? Absolutely. And why is it reasonable to force Mr. Cady or Caddy, however it's pronounced, to defend this in the United States? Because – because Congress amended Rule 4 for this exact reason. This is the only place that we have a right to assert our rights under the Lanham Act. We have incontestable mark. He is using it in the United States. It is unreasonable. It's another – yeah. This is another problem of the Internet reaching – yeah. Okay. But – but – We understand. Your – your time has expired. Okay. More than – you want to finish this up? May I finish that point? Yeah, thank you, Your Honor. I appreciate the courtesy. But the fact is that in the Burger King analysis, and particularly with Yahoo, that you – the Court just mentioned here, that – that this is the United States' sovereignty issue. The Lamanas case that we cited said there is no conflict with the United States and a foreign country when you are enforcing Federal U.S. law. And it put it in a – it is unreasonable because it's personal ejectment. The burden's on them, and it would not be reasonable for the United States to go and not have the ability to rely on its Federal incontestable mark for the use of its famous mark in the United States commerce. Okay. Thank you. Thank you, Your Honor, for the courtesy. May it please the Court. My name is Michael Condon, representing the Defendant Michael Caddy. In this case, the district court correctly held that it could not properly exercise jurisdiction over Mr. Caddy. I'd like to address Mr. Trattner's point that we did not controvert Pebble Beach's allegations that Mr. Caddy's primary target was the United States. As I remember, in 12b-1 and 12b-2s, the Court isn't bound by the allegations of the complaint as in a 12b-6. It can make factual determinations. Is that correct so far? And the lower court did make factual determinations. And it did. And it made them on the basis of affidavits submitted by the two sides? In fact, only Mr. Caddy submitted affidavits. No affidavits from the Pebble Beach in California? Pebble Beach did not submit any affidavits. So we do not make this decision as we would in a 12b-6 by what was pleaded in the complaint? To the extent that Pebble Beach pleaded facts in the complaint that we did not controvert, those facts must be taken as true. But we believe that we've controverted any facts that Pebble Beach pleaded. What's controverted and what's conceded factually? What did we controvert? What's controverted and what is conceded and what did the District Court find? The facts are very simple. Mr. Caddy is an individual residing in Barton-on-Sea, England, where he owns and operates a three-room bed and breakfast located on a Pebble Beach that he named Pebble Beach. He also has a website that the lower court found to be passive that describes his Pebble Beach Cafe, Restaurant and Bar. Those are the jurisdictional facts, and those facts do not establish that Mr. Caddy has sufficient contacts with California or with the United States to justify the exercise of jurisdiction in this case. Is he a British citizen, a United States citizen, or a dual citizen? Mr. Caddy is a dual citizen by virtue of his father's parenthood. Well, by virtue of his parentage. To return to the point that we've controverted the allegation that Mr. Caddy targeted the U.S., we submitted declarations that stated that Mr. Caddy had not received any visitors from California. We submitted declarations listing out where Mr. Caddy did advertise five publications locally, and as the district court found, those placed his advertisements no further afield than Dorset County, England, which is over 5,000 miles away from California. The part that intrigues me is his choice of .com. The other side says when you choose .com, necessarily you're trying to get into the United States market. What's your answer to that? .com is not a U.S.-specific domain name. It is the World Wide Web. .com is not the functional equivalent of .uk. There's no .us, and that is an individual in England, an individual in China can purchase a .com domain name and not be targeting the United States. A .uk. A .uk is a national-specific domain name. .com is not that. Can it be accessed here? Yes. You can Google up a .uk. Absolutely. And a .uk can be accessed anywhere in the world, just as a .com can be. I think they come up on Google just indifferent to whether it's .uk or .com, and it's just according to frequency of hits, isn't it? You're starting to test my technical knowledge of the Internet here, but sounds good to me. This is what kept you up late last night, right? I don't know if there's any specific grounds under which Pebble Beach has asserted jurisdiction that you would like me to address here. Is there any evidence that any American had ever had a beer there or anything? I think there was evidence no American had ever stayed overnight there or emailed them. Is that right? We did not submit evidence that no American has ever had a beer at the Pebble Beach Cafe restaurant. You wouldn't know if they paid in cash. Exactly. You wouldn't know about credit cards and emails. And as we said. Was there any evidence that any American had contacted the place? There's no evidence that any American has contacted through the Internet. Again, I'm glad to address the effects test. Can you talk a little about Schwarzenegger? I believe that Schwarzenegger directly governs the necessary result in this case. It is directly on point. Pebble Beach cannot be more famous than Arnold Schwarzenegger. In Schwarzenegger, this court held that the fact that an Ohio resident may have known that Arnold Schwarzenegger was located in California could not be the something more that the effects test requires in its direct aiming. The fact that he inserted pictures of Arnold Schwarzenegger into local advertisements was not a direct aiming at the Forum of California simply because he knew or could have known that Arnold Schwarzenegger was a famous Hollywood actor located in the state of California. This same result must occur here where Mr. Caddy may have known that Pebble Beach was a golf course located in California but directed his advertisements no further afield than Pebble Beach. Okay. Are we ready for the questions? Don't appear to be yet. Thank you, counsel. Thank you. You've more than used your time. You want 20 seconds? I'd just like to correct a couple of things that were said that's inaccurate. The question is, did we submit any declarations? Counsel said, no, that's not correct. We did file declarations at pages 58 through 60 of our brief that contradicts the declaration that she just referred to. Secondly — Did you say excerpts 58 to 60 or pages of brief 58 to 60? No, I'm sorry. The brief that the — What are the excerpts that you want me to look at? It's pages 168 through 194 of the two declarations, and they're described 58 and 60. And specifically — What? I'm sorry? Of our opening — of our opening brief. I apologize, Your Honor. And in there, they contradict the inferences. Where's the good stuff in the declarations? We have them right here. Okay. Mr. Gell says that, in fact, he points out that there is UK — there's UK, Appelbeach.UK website, domain name he could have picked if that's what his target was. It wasn't .com. He tested — You must have yours all marked up and tabbed there. Just — just point. It'll be real helpful. Again, let's see. Pages ER 179 through 94 is for Gelb. I know where they are. I've got them in my hand. It's just they're long, and most of them — Yes. You know, they're like all declarations. There's a whole lot of filling. In paragraph — in paragraph — in pages 1 through 184 and 185, he states about talking about targeting an F, about targeting the website and the interactive and address the issues that you raised. And on paragraph 11 of page 187, he talks about that if he really wasn't targeting the U.S., he was targeting the UK, he says — I'm sorry — in those pages that he Are there any facts here? Everything you pointed me to was just argument. No, no. On C, on page 183, C, C says that you search Pebble Beach Restaurant Co. U.K., pebblebeachcafe.co.uk is — is available. And — and this is, again, allegations of the complaint. And he said and explains that that information was available, and there's the targeting based on his marketing. I want to just correct something else. I'm looking at what I think you pointed me at, and what he says is if the defendant's primary marketing was U.K., then in my opinion, he would have purchased and used these U.K. domain names, not a U.S. domain name. That's what I meant about just being argument, not facts. Well, it's just — it's available, but it is not correct that we didn't use — there's a lot in here that we corrected, but two other things you said is not correct. Just — I'm going to correct the record, if I might. Just, please, 10 seconds. Quickly, because you're way, way over time. I understand, Your Honor. You're feeding into other people's conversation. I appreciate it. She said that they controverted that there was no visitors from California. That's not true. They submitted a declaration by an attorney without personal knowledge. We moved to strike it. They put in a new declaration by a person who had knowledge, and she didn't say there was no one from California, and she didn't say there's no one from the United States. Okay. We'll read the record. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is California Sport and Fishing Protection Alliance v. Kirk and PG&E.
judges: Schroeder, Trott, Kleinfeld